The next case on the calendar is United States v. Shin. Thank you both for your patience this morning. Last on the calendar. You might want to adjust the microphone as well when you were speaking before I couldn't hear you. Very well, Your Honor. Is this better? May I proceed, Your Honor? I guess it's afternoon by now, Your Honors. My name is Steve Zissou. I appear for Mr. Shin, who's the appellant in this case. I'm going to reserve most of my comments to the substantive reasonableness argument prong of this, unless the Court has other questions. Could, before you get going, he served the 14 days? He did. He's taken care of the restitution forfeiture? He has. Forfeiture? Right. What is there that's left? Why isn't this removed? The reason why we filed this appeal is, and I knew, and obviously I've looked into the eyes of many judges over the last thirty-four years, why are you here? What is the point of this? The sentence in this case, had it been two years, had it been 415 days, the Court might think differently, followed by 900 hours of community service for a man who had no prior criminal record, who's built a number of schools, who have serviced this community for decades, who has employed thousands of individuals, who has helped educate and care for tens of thousands of children. You might wonder, you might think differently, that a sentence of 415 days followed by 900 hours of community service was substantively unreasonable. My question is, what happens even if we agree with you? I mean, are we just talking about the 900 hours of community service or whatever balance is not yet served? Sure. In effect. If we agree with you that the sentence is substantively unreasonable, then what? He's already served it. He has, and he served the previous 401 days as well. Then I think the remedy is to vacate the sentence because the added 900 hours of community service is substantively unreasonable. It amounts over a three-year period of supervised release to literally community service every single day. It's a man, he's a father of three kids, his wife remains in jail. She was sentenced to 57 months in the underlying case. A period of supervised release. Three years of supervised release. In particular, the court's references to, it has to be in a soup kitchen, and there were constant ... Look, I'm moving on to the recusal part of this, but there were constant references to greed in the lower court record, and a refusal to accept the notion that simply because two people have assets that are worth roughly $30 million, probably more now, that they have the ability to simply convert that into $5.2 million, which is the situation. Wasn't he paying $27,000 a month in rent? He had an apartment, or I should say his family had an apartment while he was in jail that was $27,000 in rent. They had another apartment that was a loan to a ... That there was a tenant, a well-known actress paying $32,000 a month. That money was being spent. That money was being put into the restitution and forfeiture fund. From the moment I got involved in this case was after sentence, we started to negotiate with the United States attorney, essentially saying, look, they don't have the liquid assets to do this. Here's a list of properties. Take whatever you want. Forfeit whatever you want. There's no way to get conventional funding anymore. He ends up going to a ... One of those hard money lenders pays an exorbitant amount, eventually is able to borrow the money and pay it, and sort of stabilize things. If you could just pause for a second and go back to Judge Chin's initial question. He has served the sentence- He has, yes. And that you challenged for under Rule 35- Correct. ... C. He has taken care of the forfeiture and restitution- Yes. ... and he's served and worked some part of the community service. Correct. Do you know how much? Oh, I think by now it's probably up to about 100 hours. 100 of the 900, and it was a total of 900 at the end? 900, yes. And he has ... He's under supervised release- He is. ... for how much more time? It would be about another two and a half ... I think the sentence was imposed back in September. So it would be about two and a half more years, or two years and eight months, I think. What was the sentence again? And you're arguing then that the substantive unreasonable- Correct. ... of the sentence- Correct. ... and so were we to vacate, were we to agree with you, then the supervised release gets ... He gets relieved of that obligation as well as the community service, isn't he? Just the community service. He wouldn't ... I mean, the supervised release period, I think, would continue, but I think- You're not arguing that three years of supervised release was unreasonable? No, no. At this point, all we're talking about is the community service. That's pretty much it, and that's why I say ... The sentence here was ... We look at the judgment, and it says time served in 14 days, but it's 415 days of a jail sentence. Really, on the underlying ... I think the problem was on the underlying sentence, instead of saying probation, she should have said time served and supervised release, and that's why ... And time served would have wiped out the 401 days. That's correct, but Judge Irizarry pointedly decided not to do that. She told Mr. Shannon, at his sentencing, I'm not going to give you time served and supervised release because I want you to be on probation for a longer period of time. I'm limited to just three years of supervised release. I want it to be five. The flip side of that bargain is he banks the 401 days for use at a fire time, and Judge Irizarry's time has already been served. It's still time that ... I think it's very well moot, other than the question of whether 900 hours of community service was unreasonable, but the sentence has now been served. A holding that the prison term of 14 days was substantively unreasonable, I don't think we get there, even if we were to agree with you that in the circumstances, it was too much. Well, in theory, it's technically ... One could imagine ... He gets the satisfaction of the circuit saying, yes, we think this was an unreasonable prison term? Well, no. I think, in part, if there were to be a future violation, then he, in theory, could rely on that ... One could make the argument that that time was something that he could use. That's time. Another violation? Correct. If there's 13 months gone, or 14 months, I guess, is the total, if you violate on a three-year term of supervised release, the motion could be sentenced to as up to 24 months. That would just leave him with, say, eight months to do. Now, again, that's a theoretical academic discussion, but I don't think it ... I think it's enough so that the issue's not mooted, most respectfully, Your Honor. But more than anything, if the court is going to either vacate that portion of the sentence that I think makes it substantially unreasonable, which is the community service aspect and sends it back for resentencing, I think the court should exercise its discretion and return this to assign it to a different judge. This record is replete with comments that go toward an attitude by the district court that simply suggests a lack of belief of anything that's said, including to counsel. There was a time during the pendency of this litigation where we had gotten the money to pay all but roughly $38,000, and the last check, which went through my escrow account, as most of the money did, was a check from an account that was in the name of Mr. Shen's son, Ziming Jr., and there was questions at that last proceeding about whether or not counsel had been involved in some impropriety by not talking to the son about where the funds came from. No issue had ever been raised before. No suggestion had ever been made that there was any impropriety in terms of where the money was from. The United States Attorney's Office was aware of it. I worked constantly with the civil division about how to come up with a resolution and where and to whom the funds should be paid to over the course of 18 months, literally from the beginning I got into this case. And so, for those reasons, there should be some, if the case is going to be remanded, I think Your Honor should reassign it to me. Where is he doing his community service? Judge, I don't know. Probation in the Southern District is supervising it because they live in Manhattan. I'm happy to comply with that afterwards. Thank you. I'll reserve the last minute. Thank you. May it please the Court. My name is Eric Paulson and I represent the United States Government. To answer some of your pointed questions, I checked in with the probation officer a few days ago. I think it is about a hundred hours. At the time of the original sentence . . . Hours. It is already, sir. Yes. Yes, Your Honors. At the time of the original sentence on the violation of supervised release, that was about two years after the original sentence, he had been assigned 300 hours to do. He had done 20. So, over the course of two years, he did 20 hours of the 300, so nowhere near compliance. He's done about 80 more since. That's as of last week. And he is doing it, I don't have the names of them in front of me, but in some soup kitchens, so fulfilling that aspect. So it's about 100 of the 900 hours that are owed. The additional 600 hours that the district judge assigned as the violation of supervised release is the exact amount that the probation department requested. This is the same probation department that watched him for two years as he didn't pay his restitution, didn't pay his forfeiture, and found time to do 20 hours over two years. The probation department had the fullest sense of what he was capable of doing and what sort of time he had, and gave him, gave the court the advice that it be so. The rest of the case, moot, or are we only talking about the 800 hours at this point? Your Honor, I don't know what the remedy would be if Your Honor found that the 14 days was unreasonable. I will add, this doesn't go to mootness necessarily, Your Honor, but the government at sentencing had asked that the court give him the full 37 to 45 months that he initially had under his original sentence. The court, in the government's opinion, was very, very lenient with him and has consistently been lenient with him. Fourteen days, based on his absolute inability to follow the court's orders, even while he has $30 million. What if you called it 415 days? Well, I think it is 415 days at this point, which is still less than what you, the government was asking for. It's far less, and only a little bit more than what the recommended guidelines on a C violation, of a violation of supervised release, would add in the . . . What's the recommended range for C? I believe it went up to 10, 10 months for the recommended guideline range. And just to be clear to Your Honor, the 401 days he served, the appellant was on bond initially. He wasn't able to make the bail, is that right? Is that why he served the 401 days? He served the 401 days because he tried to escape the country. Your Honor, he was on bond for five months. The original plea happens in April of 2013. In September of 2013, the State Department finds out that he's applied for a passport. Pretrial Services makes a visit to his home. They find out at that time that his children, his twin boys, who were 13 at the time, had traveled to China with their nanny, and that the defendant was applying for a passport. The district judge then remanded him for the 401 days. The 401 days is the date of the time that the State Department believed he was about to flee the country and when he was sentenced. And at that point, the court gave him probation. It didn't give him any more jail time. So that amount was not a sentence that the judge imposed later on. That was the, I think it's fair to say, the appellant violating the court's trust and trying to leave. Your Honors, I will say, since the plea in this case, noncompliance has been the operative word for describing the appellant. Not just his attempts to leave the country, but his consistent refusal to pay his restitution, to pay his forfeiture, or to do really any modicum of the supervised release, I'm sorry, the community service that is owed in a supervised release. In regard to the bias issue, as I've noted in several points in my brief, I think the appellant has been a little, has selected some of these words carefully that have happened with the court. In the petitioner's, the appellant's brief, he notes at one point that Judge Irizarry interrupted him. It doesn't mention that Judge Irizarry apologized for interrupting immediately thereafter. There's a footnote where I mentioned that Judge Irizarry said something to the effect of I thought I was speaking English when defense counsel wasn't heeding one of her requests. I noted in my footnote that this happened after the appellant's counsel kept on making the same argument. Judge Irizarry asked him to move on, saying she had received those arguments, she had In all due respect, Your Honor, I don't think you understand what I'm saying. Even if you, without that proper context, I don't think these comments come anywhere near the standard that the Supreme Court and this court has set for bias or perceived bias. And we would ask that Your Honors dismiss that portion of the appeal. If Your Honors don't have any other, more questions, I'll reserve. Thank you. If I may, Your Honors, it simply is not the case that Mr. Shen acted contumaciously. Mr. Paulson was not part of the case at the time. It was immediately after his sentencing in October that we commenced discussions in an effort to resolve the amount that was in dispute to the suggestion that he was somehow refusing to comply with his obligation. Had he applied for a passport? He did. He did. That was on a prior occasion. He applied for a passport. That is correct, Your Honor. Mr. Paulson is correct. He applied for a passport. His counsel at the time explained to the court that he had a, they have businesses in China, and he had a matter that had to be attended to rather than asking the court for leave to go to China to resolve it. He decided to get a passport. It certainly wasn't an intelligent thing to do, but that's what he did. There was no desire on his part to flee. He's an American citizen. Were his sons, had his sons gone to China with him? No, no. His sons were in China. His wife's mother is well into her 90s. She was there. There was no effort to flee. All of his children are American citizens, as are he and his wife. They have been here since they were very young people. There's no interest whatsoever in fleeing. All of their properties are located here, all of their business. They run something in the area of 20 to 30 preschools. There's no reason whatsoever for them to flee. This was a foolish decision by Mr. Shen to get a passport that obviously didn't inure to his benefit. But the suggestion that along the way, he was avoiding this obligation is simply not true. I was there, and as I indicated, we try to do this from the beginning. Thank you, Your Honors. Thank you both, and again, thank you for your patience. It's a privilege to appear here again, Your Honors. Thank you. It's the last case to be argued on the calendar this morning, so I'll ask the clerk to adjourn.